IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| ROGER H. McNEAL, Jr. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:24-cv-361-JAG |
| | ) | |
| AECOM TECHNICAL SERVICES, INC., *et al.* | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**OPPOSITION TO TRANSTECH'S MOTION TO DISMISS**

Plaintiff Roger McNeal, Jr., by counsel, states the following in opposition to Defendant Transtech's Motion to Dismiss and Brief in Support (ECF Nos. 19-20).

**Summary**

For over a decade, McNeal assisted motorists along Virginia highways as part of VDOT's Safety Service Patrol ("SSP"). VDOT contracted with AECOM to provide the SPP services, AECOM subcontracted with Transtech, and they fulfilled the VDOT contract together. The Amended Complaint alleges in detail how the AECOM-Transtech arrangement was operated to constitute a "joint employment relationship" under Fourth Circuit precedent. (Am. Compl., ¶¶ 8-47). But when McNeal needed employee benefits from AECOM and Transtech for a back injury he suffered at work, he was terminated. The law required AECOM and Transtech to have provided McNeal job-protected leave under the Family Medical Leave Act and to engage in the interactive process as required by the Americans with Disabilities Act and the Virginia Human Rights Act ("VHRA"). In failing to do so, AECOM and Transtech violated McNeal's employment rights.

1

Now neither AECOM nor Transtech admit they were McNeal's employer. Transtech argues that McNeal alleges insufficient facts to establish Transtech is an employer because the facts show AECOM is the employer. (Memo. Supp. Mot. Dismiss ("Memo"), ECF No. 20, p. 6). This argument lacks merit, because the ability to hire and fire is a primary guidepost for a joint-employer relationship and McNeal alleges in detail how Transtech's President fired him in a phone call and series of text messages (Am. Compl., ¶¶ 35-44). These allegations, and numerous others listed below, sufficiently allege the control that both AECOM and Transtech asserted over McNeal and how they acted with each other's interest. (*See, e.g.*, Memo., p. 6, citing *Butler v. Drive Auto. Indus. Of Am., Inc.*, 793 F.3d 404, 414–15 (4th Cir. 2015)).

Transtech's other arguments also lack merit. First, Transtech seeks dismissal of the FMLA and ADA claims by asserting a new fact that "Plaintiff is still incapable of returning to work today," and arguing McNeal has not been damaged and was not entitled to an accommodation. (Memo., pp. 10, 12). But McNeal alleges he had a successful back surgery shortly after his injury and was able to return to work with a 50lb weight restriction. (Am. Compl., ¶¶ 45-46). And McNeal's ADA claim is based on AECOM and Transtech's failure to engage in the interactive process. (*Id*. at ¶¶ 44, 69, 85). Second, Transtech seeks dismissal of the ADEA claim by arguing McNeal failed to allege sufficient facts that younger similarly situated employees received more favorable treatment. (Memo., pp. 17-18). But McNeal has alleged at least one comparator exists who was younger, required disability leave, and was able to take advantage of leave policies as a Transtech employee working on the AECOM subcontract. (Am. Compl., ¶ 79). Moreover, McNeal's ADEA theory is also based on the allegation that AECOM and Transtech assigned older workers to Transtech and younger workers to AECOM. (*Id*. at ¶ 80). These facts are sufficient to survive a motion to dismiss and allow for discovery on these issues.

Finally, the Court should deny any request by Transtech for an extension of time to file responsive pleadings on the ground Transtech was not served with the Amended Complaint. The facts Transtech offers are insufficient to overcome the presumption that the Proof of Service was proper. The Court should deny Transtech's Motion to Dismiss on this procedural ground and order Transtech to file an Answer. For all of these reasons, McNeal asks the Court to deny Transtech's Motion to Dismiss.

## Legal Standard

### I. Legal Standard Applicable to Rule 12(b)(6)

"To survive a Rule 12(b)(6) motion, the complaint 'must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.'" *Brown v. AECOM, Inc.*, 2022 U.S. Dist. LEXIS 15022, *6-7 (W.D. Va. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is facially plausible when the plaintiff's allegations 'allow [] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Brown*, 2022 U.S. Dist. LEXIS at *7 (quoting *Ashcroft*, 556 U.S. at 678). "[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft 'to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted).

The Fourth Circuit Court of Appeals has explained that

> [i]n the context of a Title VII case, 'an employment discrimination plaintiff need not plead a prima facie case of discrimination' to survive a motion to dismiss, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515, 122 S. Ct. 992, 152 L.E.2d 1 (2002). Instead, a Title VII plaintiff is "required to allege facts to satisfy the elements of a cause of action created by the that statute." *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015).

*Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (2020) (footnote omitted). "Accordingly, [the] inquiry is whether [the plaintiff] alleges facts that plausibly state a violation of Title VII 'above the speculative level.'" *Id.* at 617 (quoting *Coleman v. Md. Ct. of App.,* 626 F.3d 187, 190 (4th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 548 (2007)).

## II. Legal Standard Applicable to Rule 12(b)(5)

A "Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery [] of the summons and complaint." *Harris v. Johns Hopkins Health Sys. Corp.*, Civil Action No. ELH-23-701, 2023 U.S. Dist. LEXIS 90799, at *3-4 (D. Md. May 23, 2023) (citing 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1353 (3d ed. 2004, Supp. 2021). "Once service has been contested, the plaintiff bears the burden of establishing the validity of service pursuant to Rule 4." *O'Meara v. Waters*, 464 F. Supp. 2d 474, 476 (D. Md. 2006); *accord, see e.g., Baylor v. Wegman's Food Market, Inc.*, WDQ-14-3330, 2015 U.S. Dist. LEXIS 93053, 2015 WL 4396609, at *1 (D. Md. July 16, 2015).

> A signed return of service from a private process server is "strong evidence of valid service." *Greater St. Louis Constr. Laborers Welfare Fund v. Little*, 182 F.R.D. 592, 595 (E.D. Mo. 1998); *see also Mobern Electric Corp. v. Walsh*, 197 F.R.D. 196, 198 (D.D.C. 2000) (finding process server's affidavit created rebuttable presumption that service was valid); *Kost v. United Parcel Serv.*, 926 F. Supp. 1022, 1024 (D. Kan. 1996) (finding return of service combined with accompanying affidavit of counsel established a prima facie case of valid service). In order to rebut this presumption, a defendant bears a heavy burden.

*Patterson v. Brown*, No. 3:06cv476, 2008 U.S. Dist. LEXIS 9312, at *22-23 (W.D.N.C. Jan. 23, 2008). "A presumption of valid service 'can be overcome only by strong and convincing evidence.'" *Id.* (quoting *Greater St. Louis Constr. Laborers Welfare Fund*, 182 F.R.D. at 595).

## Argument

### I. McNeal's claims are plausible and sufficiently alleged.

A. <u>Count I states a plausible claim for FMLA interference.</u>

4

The FMLA makes it unlawful for an employer to "interfere with, restrain, or deny the exercise or the attempt to exercise" any right provided by the FMLA. 29 U.S.C. § 2615(a)(1). The FMLA also prohibits an employer from taking adverse employment action against any employee because he or she engaged in conduct protected by the FMLA. 29 U.S.C. § 2615(a)(2). An employee requesting a leave of absence does not have to mention the FMLA for the leave to be FMLA-qualifying. *Hannah P. v. Coats*, 916 F.3d 327, 345-46 (4th Cir. 2019). An employer's obligation when they have information that there is an FMLA-qualifying reason for an employee's requested leave is to offer the employee an FMLA Notice of Eligibility, Rights and Responsibilities Notice, and a Designation Notice ("FMLA Notices"). *Id.* Then, the employee can elect to file for FMLA or not.

> Interference with FMLA benefits includes "refusing to authorize FMLA leave, discouraging an employee from taking FMLA leave, and manipulating the work force to avoid responsibilities under the FMLA." *Rodriguez v. Reston Hosp. Ctr., LLC*, 2017 U.S. Dist. LEXIS 28866, 2017 WL 772348, at *4 (E.D. Va. Feb. 28, 2017) (citing *Battle v. City of Alexandria*, 2015 U.S. Dist. LEXIS 49024, 2015 WL 1650246, at *4 (E.D. Va. Apr. 14, 2015)). Most relevant to this case, "[a]n employer's conduct may constitute interference with an employee's FMLA rights if it would have a chilling effect and would discourage employees from exercising their FMLA rights." *Mook v. City of Martinsville*, 2024 U.S. Dist. LEXIS 106110, 2024 WL 2988285, at *2 (W.D. Va. June 14, 2024) (internal citations omitted).

*Twine v. AT&T, Inc.*, No. 2:23-cv-510, 2024 U.S. Dist. LEXIS 201585, at *38 (E.D. Va. Nov. 5, 2024).

Transtech argues that it is not a covered employer under the FMLA because it does not employ a sufficient number of employees. (Memo., p. 5). Transtech also argues that even if it was McNeal's joint employer with AECOM and collectively employed the requisite number of employees, that Transtech was not McNeal's primary employer and therefore owed him no duties under the FMLA. (*Id.*). Transtech quotes the paragraph of the Amended Complaint alleging that AECOM was McNeal's primary employer, conspicuously leaving out the next paragraph which

5

alleges "[i]n the alternative, Transtech was McNeal's primary employer and AECOM was McNeal's secondary employer for FMLA purposes." (Am. Compl., ¶¶ 61-62). Transtech's arguments are contrary to the law and are based on a selective reading of the Amended Complaint. Accordingly, the Court should reject them. McNeal sufficiently alleges both AECOM and Transtech exercised some control over the work or working conditions, as described in detail below. 29 C.F.R. § 825.106(a).

1. *Transtech meets the definition of McNeal's employer.*

The FMLA's definition of "employer" includes "any person who acts, directly, or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I). Finding an employer relationship is not onerous under the FMLA. The United States Department of Labor ("DOL") "regulations recognize that the FMLA definition of employ, meaning to suffer or permit to work, is based on the language of the Fair Labor Standards Act (FLSA), which is interpreted to require much less positive action than under the common law. 29 C.F.R. § 825.105(a)." *Frees v. UA Local 32 Plumbers & Steamfitters*, 589 F. Supp. 2d 1221-22 (W.D. Wash. 2008).

McNeal sufficiently pleads that Transtech employed McNeal. Transtech (1) sent Roger an offer letter to employ him, (2) paid him for 3.5 years with the Transtech name on Roger's paychecks, W-2 forms, disability policy forms, and COBRA coverage forms, and (3) ultimately terminated him without input from AECOM based on its own misguided analysis that it could avoid offering FMLA based on its number of employees and without recognizing its legal obligation to include AECOM's employees in the count. (Am. Compl., ¶ 24).

*2. Transtech and AECOM were McNeal's joint employers.*

The "regulations require only that one employer act directly or indirectly in the interest of the other employer for both to be considered in a joint-employment relationship under the [FMLA]. 29 C.F.R. § 825.106(a)(2)." *Id.* A joint employment relationship can also be found "Where the employers are not completely disassociated with respect to the employee's employment and may be deemed to share control of the employee, directly or indirectly, because one employer controls, is controlled by, or is under common control with the other employer." C.F.R. § 825.106.

McNeal sufficiently alleges that Transtech is a joint employer with AECOM, because the facts alleged show Transtech and AECOM were acting within each other's interests and each shared in control of McNeal. (*See* Am. Compl., ¶¶23-24). Furthermore, Transtech was a contractor to AECOM's contract, indicating by definition that it was acting "in the service of" or "controlled" by AECOM by administratively handling employees who physically served the AECOM contract with VDOT. *See* C.F.R. § 825.106.

*3. McNeal alleges plausible claims regardless of Transtech's classification as a primary or secondary employer.*

In deciding the Motion to Dismiss, the Court does not need to reach the question of whether Transtech or AECOM was McNeal's primary employer under the FMLA. First, the Amended Complaint alleges in the alternative that Transtech and AECOM each qualify as McNeal's primary employer for purposes of the FMLA. (Am. Compl., ¶¶61-62; *see also* ¶¶ 50-60). While Transtech argues that the allegations are only sufficient to demonstrate that AECOM is the primary employer, both theories of liability are adequately plead.

> In joint employment relationships, only the primary employer is responsible for giving required notices to its employees, providing FMLA leave, and maintenance of health benefits. Factors considered in determining which is the primary employer include authority/responsibility to hire and fire, assign/place the employee, make payroll, and provide employment benefits. For employees of temporary placement

7

agencies, for example, the placement agency most commonly would be the primary employer.

29 C.F.R. § 825.106. This regulation largely describes the allegations in the Amended Complaint regarding Transtech's position in the joint employment relationship. (*See* Am. Compl., ¶¶ 24 (f-g), 35, 37-38).

Second, both the primary and secondary employers share responsibility to uphold the law, and either or both can be found liable for an FMLA violation. Thus, even if the allegations are sufficient to establish that Transtech is only the secondary employer, it shares liability for taking the action of denying McNeal his FMLA rights. "The secondary employer, whether an FMLA-covered employer or not, is prohibited from interfering with a jointly- employed employee's exercise of or attempt to exercise his or her FMLA rights." U.S. Dept. of Labor Wage and Hour Division, *Fact Sheet #28N: Joint Employment and Primary and Secondary Employer Responsibilities Under the Family and Medical Leave Act (FMLA)* (2020), *available at* https://www.dol.gov/agencies/whd/fact-sheets/28n-fmla-joint-employment (last accessed Nov. 27, 2024).

    4. *McNeal sufficiently alleges damages.*

Transtech callously argues that it "would not have made the slightest difference if [McNeal] took FMLA leave, as he would be in precisely the same situation he is in today… His FMLA allegations are therefore moot, given that he could not recover any damages, even if he could establish a violation." (Memo., p. 10). Transtech has cited no caselaw supporting its argument that McNeal's purported inability to return to work means McNeal's FMLA claim is moot, and none exists. Likewise, Transtech has offered no authority for its offering facts for the Court's consideration on a Motion to Dismiss, where the facts offered are contrary to the plain allegations of the complaint. The facts alleged show Transtech's violation of the FMLA's required

process, constituting interference with McNeal's FMLA rights. The facts alleged further show McNeal's request for unpaid leave pending surgery was a short-term request that would have required a new discussion following surgery to determine if McNeal could be accommodated. McNeal alleges that at the end of 12 weeks, he could have performed the essential functions of his job with a reasonable accommodation. (Am. Compl., ¶ 46). Because AECOM and Transtech denied McNeal that opportunity, McNeal alleges that he had to start paying more for COBRA as opposed to simply paying his share for his health insurance during those 12 weeks, and then he began suffering lost wages because he has been unable to find comparable employment due to the unique job he had with the SSP. (*Id.* at ¶¶ 38-41, 47, Prayer for Relief).

      B.  <u>McNeal states plausible claims for violations of the Americans with Disabilities Act and the Virginia Human Rights Act.</u>

The ADA protects qualified individuals with disabilities from discrimination on the basis of their disabilities. 42 U.S.C. § 12112(a). The ADA prohibits not only disparate treatment because of an employee's disability, but the failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified [employee] with a disability." *Id.* at (a)-(b).

Courts have analyzed VHRA and ADA claims together and have applied the same standards to both. *See, e.g., Ayers v. Wal-Mart Assocs., Inc.*, Civil Action No. 7:23-cv-00419, 2024 U.S. Dist. LEXIS 165361, at *1-2 (W.D. Va. Sep. 13, 2024) (recognizing the "overlapping standards" of the VHRA, ADA, and Title VII discrimination claims); *see also Romano v. Verasign, Inc.,* 2023 WL 1797890, Civil Action No. 1:22-cv-00549 (E.D. Va. Feb. 7, 2023) (Considering VHRA as identical on the merits for purposes of summary judgment to Title VII claim).

*1. Transtech was McNeal's Employer under the ADA and the VHRA.*

For the same reasons it qualifies as an employer under the FMLA, Transtech is assumed to be McNeal's employer under the ADA and VHRA. "The ADA assumes the existence of an employer/employee relationship. It defines an 'employee' as 'an individual employed by an employer,' 42 U.S.C. § 12111(4)." *Smith v. CSRA*, 12 F.4th 396, 412 (4th Cir. 2021). "As the EEOC's standard reflects, an employer is the person, or group of persons, who owns and manages the enterprise. The employer can hire and fire employees, can assign tasks to employees and supervise their performance, and can decide how the profits and losses of the business are to be distributed." *Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 449-50 ("We are persuaded by the EEOC's focus on the common-law touchstone of control." (citing *Skidmore* v. *Swift & Co.*, 323 U.S. 134, 140 (1944)). The "joint employment doctrine [] prevents those who effectively employ a worker from evading liability by hiding behind another entity." *Butler v. Drive Auto. Indus. of Am.*, 793 F.3d 404, 410 (4th Cir. 2015) (citing *Sibley Mem'l Hosp. v. Wilson*, 488 F.2d 1338, 1341 (D.C. Cir. 1973)).

The allegation that Transtech unilaterally terminated McNeal's employment is itself sufficient to qualify Transtech as an "employer" under the ADA. "[O]ne factor alone can serve as the basis for finding that two or more persons or entities are 'not completely disassociated' with respect to a worker's employment if the facts supporting that factor demonstrate that the person or entity has a substantial role in determining the essential terms and conditions of a worker's employment." *Butler*, 793 F.3d at 408 (in determining that the joint employer doctrine applies to Title VII, and that the contractor was a joint employer of subcontractor's employee for purposes of liability, neither party nor the Court disputed that ResourceMFG, the subcontractor that *terminated and paid* plaintiff, was an employee.) (emphasis added). McNeal adopts the other

arguments set forth above regarding why Transtech is an employer under the FMLA, to be part of the reasoning why the Court should find Transtech an employer under the ADA.

Transtech likewise qualifies as an employer under the VHRA. Under the VHRA, an employer "means any person, or agent of such person, employing more than five employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year." Va. Code § 2.2-3905.1.

> 2. *McNeal's claim against Transtech for violating the ADA survives even if Transtech is not his "employer."*

Even if Transtech could successfully argue that it did not qualify as McNeal's employer, it is still liable for disability discrimination under the ADA. The Supreme Court has held it unlawful to interfere with an individual's employment opportunities with another employer: "[t]o permit a covered employer to exploit circumstances peculiarly affording it the capability of discriminatorily interfering with an individual's employment opportunities with another employer, while it could not do so with respect to employment in its own service, would be to condone continued use of the very criteria for employment that Congress has prohibited." *Sibley Mem'l Hosp.*, 488 F.2d at 1341 (citing *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971) ("What is required by Congress is the removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification.")).

Accordingly, the EEOC's guidance documents state: "ADA section 102(a) does not limit its protections to an employer's own employees, but rather protects an 'individual' from discrimination.'" *See* 42 U.S.C. § 12112(a) (1994); 29 C.F.R. § 1630.4 (2000). "Thus, an employer is prohibited from interfering with a person's employment opportunities with another employer, even if s/he is not its employee." Equal Empl't Opportunity Comm'n, *Enforcement Guidance on the Application of the ADA to Contingent Workers Placed by Temporary Agencies and Other*

*Staffing Firms* at n.13, *available at:* https://www.eeoc.gov/laws/guidance/enforcement-guidance-application-ada-contingent-workers-placed-temporary-agencies-and (2000) (last accessed Nov. 27, 2024). Transtech was therefore prohibited from interfering with McNeal's ADA rights he has from AECOM. Transtech interfered when it fired McNeal, among its other actions and inactions detailed in the Amended Complaint.

    3. *McNeal alleges a plausible violation of the ADA and the VHRA.*

Transtech had an obligation to engage in the interactive process under the ADA and the VHRA. *See Corbett v. Richmond Metro. Transp. Auth.*, 203 F. Supp. 3d 699, 706-707 (E.D. Va. 2016) ("The interactive process typically requires 'that employers make a good-faith effort to seek accommodations.' Persistent refusal to engage in discussions or take any remedial action could arguably constitute failure to engage in the interactive process." (quoting *Williamson v. Bon Secours Richmond Health Sys., Inc.*, 34 F. Supp. 3d 607, 613 (E.D. Va. 2014))); Commonwealth of Virginia Office of Civil Rights, *Discrimination Info Sheet*, *available at* https://www.oag.state.va.us/files/OCR/OUTREACH_INFO%20SHEET_DISABILITY-DISCN-PROVISIONS.pdf (last accessed Nov. 27, 2024) ("Employers also may not, in response to a request for a reasonable accommodation for disability: take adverse actions against an employee; deny employment or promotions; or require an employee to take leave if another reasonable accommodation can be provided."). *See Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 346-347 (4th Cir. 2013) ("[I]t is the employee's initial request for an accommodation which triggers the employer's obligation to participate in the interactive process of determining one.") (quoting *Taylor v. Principal Fin. Group, Inc*., 93 F.3d 155, 165 (5th Cir. 1996)).

McNeal triggered Transtech's duty to engage in an interactive process to identify a reasonable accommodation when McNeal communicated to Murthy that he had a disability and

that he desired FMLA and disability leave to accommodate him pre-surgery. (Am. Compl. ¶¶ 30, 39). Transtech then fired McNeal. (*Id.* at ¶ 38)

Based on these facts, the Amended Complaint plausibly alleges Transtech denied McNeal his right to the interactive process to determine if a reasonable accommodation existed. (*See* Am. Compl., ¶ 69). At no time did Transtech engage with McNeal to find out if his doctor would allow him to do a non-physical job for the time being, or if they could otherwise offer him assistance for the time needed to help him do his job pending surgery. (*See id.* at ¶¶ 69-72). Nor did it consider unpaid leave as a reasonable accommodation. (*See id.* at ¶ 70).

> The ADA—as detailed in regulations and the Department of Justice's advice to employers—acknowledges the necessity of a *genuine give-and-take* between an employee seeking a change to the employer's procedures or practices and an employer who must balance the particular needs of *that* employee with its business model and other, less-needy employees.

*Williamson*, 34 F. Supp. at 613 (emphasis added). Transtech's indifference to its responsibilities is evidenced by its immediate denial of McNeal's FMLA request and its complete lack of give-and-take to discover what reasonable accommodation could be put in place for McNeal, a long-time employee who had always performed his job well.

Transtech argues that "the request [McNeal] asked for was patently unreasonable." (Memo., p. 11). But the Amended Complaint alleges that McNeal and Transtech did not even begin the interactive process to determine the details of what McNeal could or could not do. (Am. Compl., ¶ 34). McNeal alleges he simply started by offering a doctor's note that he needed to take leave prior to surgery in order to work through the FMLA process. (*Id.* at ¶ 30). That process involves a full doctor's report on what an employee can and cannot do and how long an employee's recovery should take. *See* U.S. Dep't of Labor Wage and Hour Div., *Certification of Health Care Provider for Employee's Serious Health Condition under the Family and Medical Leave Act*,

*available at* https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/WH-380-E.pdf (last accessed Nov. 26, 2024) (Physician asked to provide their "**best estimate** of the duration of the treatment(s), including any period(s) of recovery.") (emphasis in original). Likewise, the ADA allows an employer to engage in a "disability-related inquiry," including asking an employee to provide medical information regarding an employee's disability. *See* Equal Emp't. Opportunity Comm'n, *Enforcement Guidance on Disability-Related Inquiries and Medical Examinations of Employees under the ADA* (2000), *available at* https://www.eeoc.gov/laws/guidance/enforcement-guidance-disability-related-inquiries-and-medical-examinations-employees#4 (last accessed Nov. 26, 2024).

The Fourth Circuit Court of Appeals and both the United States District Courts for Eastern and Western Districts of Virginia have found that a complete failure to accommodate a disability is a sufficient question of fact to submit to a jury on constructive discharge. *See Johnson v. Shalala*, 991 F.2d 126, 132 (4th Cir. 1993) (complete failure to accommodate could be sufficient to show constructive discharge); *Johnson v. Kmart Corp.*, 942 F. Supp. 1070, 1073 (W.D. Va. 1996); *Crump v. TCoombs & Assocs., LLC*, Case No. 2:13-cv-707, 2015 U.S. Dist. LEXIS 128160, at *149-156 (E.D. Va. Sept 22, 2015) (accord). Furthermore, Transtech's "failure to 'discuss a reasonable accommodation in a meeting in which the employer takes an adverse employment action' against a disabled employee is evidence of bad faith." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 581-82 (4th Cir. 2015) (internal citations omitted) (A "reasonable jury could easily conclude that the [employer] acted in bad faith by failing to engage in the interactive process" where supervisors did not discuss an employee's accommodation request but instead fired the employee.). Accordingly, McNeal's factual allegations showing that Transtech refused to take

14

any meaningful steps towards accommodating him, but instead terminated him, states a plausible claim for violation of the ADA and the VHRA.

### C. Count III states a plausible claim for violation of the ADEA.

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To establish a prima facie claim of age discrimination under the ADEA, McNeal must allege that: (1) he is at least 40; (2) he was performing his job to the legitimate expectations of his employer; (3) his employer took an adverse employment action against him; and (4) younger similarly situated employees received more favorable treatment. *Drake v. Sci. Applications Int'l Corp.,* No. 2:17-cv-02664-DCN-MGB, 2019 U.S. Dist. LEXIS 64504, at *27 (D.S.C. Mar. 4, 2019). Transtech argues that McNeal has failed to alleged factor four, that younger similarly situation employees received more favorable treatment.

McNeal has alleged that younger employees who required disability leave were able to take medical leave and return to work, but he was not permitted to do so. (Am. Compl., ¶¶ 77, 79). Furthermore, it makes common sense that McNeal's age would be a consideration by Transtech in determining whether to use funds to protect his employment. And, in discovery, McNeal will explore instances of Transtech employees who requested state or federal disability or FMLA leave, and how they were treated in relationship to their ages. It is sufficient at this stage that McNeal alleges that others were treated differently.

Moreover, McNeal alleges that AECOM and Transtech structured their joint employer relationship in a way that certain employees who were among all previously AECOM employees would receive paychecks from Transtech, and that in selecting such employees the age of the

15

employee was a consideration. (Am. Compl., ¶¶ 18-20). If this allegation is proven, the result could be McNeal's being among only older employees and therefore without a sufficient cohort for comparators, unless AECOM's employee records are reviewed. It is a claim proven by documents to which McNeal does not have access at this stage of the case. But the facts alleged are sufficient, because the inferences from the facts alleged are enough to establish a plausible claim. *Brown*, 2022 U.S. Dist. LEXIS at *7 (quoting *Ashcroft*, 556 U.S. at 678) (Plausibility exists when a Complaint's allegations "allow [] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Transtech's argument that McNeal does not sufficiently allege a comparator is misplaced. (Memo., pp. 19-20). McNeal alleges in his disparate treatment claim that he was treated differently than similarly situated SSP employees, whose jobs were indistinguishable. (Am. Compl., ¶¶ 13, 16, 19, 79). Disparate treatment and comparator evidence are different concepts; a plaintiff does not invoke a comparator claim simply by alleging they were treated differently than their coworkers on account of their protected class. Rather, the disparate treatment element is "met if similarly-situated employees outside the protected class received more favorable treatment," which is what McNeal plausibly alleges. *Gaines v. Balt. Police Dep't*, 657 F. Supp. 3d 708, 735 (D. Md. 2023) (internal quotations omitted). Accordingly, the Court should deny Transtech's Motion to Dismiss McNeal's ADEA claim.

    **II.**    **Transtech fails to rebut the presumption of proper service.**

On August 9, 2024, at 4:55, process server Joe Horton ("Horton"), Chief Process Server for LawServePro, attests in the Proof of Service that he (1) went to Transtech's registered address with a copy of the summons and the Amended Complaint, (2) found an individual at that address identifying himself as Umesh Murthy, President of Transtech, (3) verified that the individual

identifying himself as Umesh Murthy, President of Transtech, was authorized to accept service on behalf of Transtech, and (4) served that individual the Summons and Amended Complaint in this matter. (ECF No. 14); *see* LawServePro.com, *About Us*, *available at* https://lawservepro.com/about-us/ (last accessed Nov. 27, 2024) (Horton began LawServePro in 2017 after serving in the U.S. Army as a military police officer, earning his paralegal certificate with honors, and working as a certified paralegal). Horton described Murthy in the Proof of Service and told Horton his birthdate of March 22, 1960. (*Id.*). Horton could not have known this specific information about Murthy absent serving Murthy.

After this service, Transtech did not contact McNeal's counsel or make inquiries into the existence of the Amended Complaint until first raising the issue in their Answer to AECOM's Counterclaim. (ECF No. 17 at p. 1, n.1). Transtech raised for the first time in its Motion to Dismiss the facts about Transtech's President's colonoscopy. (ECF No. 20, pp. 4-5). Murthy does not rebut the specific facts contained in the Proof of Service, except for a *de minimis* statement about his hair being gray, not black. However, when Transtech was served again on Sept. 24, 2024, this time by AECOM, that process server also described Murthy's hair as black. (ECF No. 11, p. 2). Transtech's filing also does not state that Murthy did not authorize any other person to accept service on behalf of Transtech.

Should the Court determine that new service be effectuated, Plaintiff asks that the Court extend the time to serve under Rule 4(m) because good cause exists to do so and there is no evidence to suggest that Transtech would be unfairly prejudiced by the extension. *See Bruce v. City of Wheeling*, Civil Action No. 5:07cv76, 2008 U.S. Dist. LEXIS 87790, at *16 (N.D.W. Va. Oct. 29, 2008) (Even where Plaintiff failed to effectuate timely service or offer evidence of good cause, Court was authorized under Rule 4(m) to extend the time for service).

WHEREFORE, the Court should deny Transtech's Motion to Dismiss and grant such other relief as the Court deems appropriate.

Respectfully submitted,

/s/ *Sarah Robb*
Sarah Robb (VSB No. 76734)
SARAH ROBB LAW
919 East Main Street, Suite 1000
Richmond, Virginia 23227
Telephone: (804) 482-1536
sarah@sarahrobblaw.com
*Attorney for Plaintiff Roger McNeal*

## CERTIFICATE

I hereby certify that on the 27th day of November 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Jon M. Murdock (VSB No. 26647)
(703) 992-6950
jmurdock@pottermurdock.com
Brian S. Szmak (VSB No. 92555)
(202) 798-6053
bszmak@pottermurdock.com
Potter & Murdock, P.C.
252 N. Washington Street
Falls Church, VA 22046
*Counsel for Defendant AECOM Technical Services, Inc.*

Aron L. Zavaro (VSB No. 95442)
Thatcher Zavaro & Mani
Belle Point Office Park
7849 Belle Point Drive
Greenbelt, Maryland 20770
301-441-1400
alz@thatcherlaw.com
*Counsel for Defendant Transtech Engineering Consultants, Inc.*

/s/ *Sarah Robb*
Sarah Robb (VSB No. 76734)
SARAH ROBB LAW
919 East Main Street, Suite 1000
Richmond, Virginia 23227
Telephone: (804) 482-1536
Facsimile: (804) 988-5464
sarah@sarahrobblaw.com
*Attorney for Plaintiff Roger McNeal*